UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS TRUJILLO-LOPEZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF VALLEJO, VALLEJO POLICE DEPARTMENT, POLICE OFFICER ROBERT DEMARCO, CHIEF OF POLICE ANDREW BIDOU, and Does 1-100,<br><br>Defendants. | Case No.  4:20-cv-02139-JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES RELATED TO THE SPECIAL MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 21, 22 |

Now before the Court for consideration is the motion to dismiss and the motion to strike filed by Defendants City of Vallejo ("Vallejo" or "the City"), Vallejo Police Department ("Vallejo PD"), Police Officer Robert DeMarco ("DeMarco"), and Chief of Police Andrew Bidou ("Bidou") (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and HEREBY GRANTS Defendants' motion to dismiss with leave to amend where specified. The Court also GRANTS Defendants' motion for attorneys' fees related to its motion to strike Plaintiff's claim for defamation.

## BACKGROUND

Plaintiff Luis Trujillo-Lopez ("Trujillo-Lopez" or "Plaintiff") brings this action against the Defendants as a result of an incident between Officer DeMarco and Trujillo-Lopez in which Trujillo-Lopez was injured.

1  On October 28, 2018, Trujillo-Lopez and his friend, Kenny Santiago ("Santiago") were

2  shopping together when they were informed that Vallejo PD was towing Santiago's van, which

3  was parked in front of Trujillo-Lopez's apartment complex on El Camino Drive in Vallejo,

4  California.  (Complaint, ¶¶ 11-12.)  Trujillo-Lopez and Santiago made their way to the van so that

5  Santiago could retrieve his belongings before the van was towed.  (*Id.*, ¶ 12.)  Officer DeMarco

6  was the only officer on the scene.  (*Id.*, ¶ 13.)

7  Trujillo-Lopez alleges that Officer DeMarco became belligerent with him, urging Trujillo-

8  Lopez to fight DeMarco, a request that Trujillo-Lopez claims he refused.  (*Id.*, ¶ 14.)  Plaintiff also

9  alleges that DeMarco then told Santiago that he had five minutes to retrieve his belongings from

10  the car before the van would be towed.  (*Id.*, ¶ 16.)  Before the five minutes were up, Plaintiff

11  alleges that the tow truck driver connected the van and began lifting it off the ground, forcing

12  Trujillo-Lopez and Santiago to get out of the van.  (*Id.*, ¶ 17.)

13  Shortly thereafter, Trujillo-Lopez alleges that Officer DeMarco, unprovoked, began

14  assaulting him by pushing him to the ground and beating him with a baton in the head, face, arm

15  and body.  (*Id.*, ¶¶ 19-20.)  Trujillo-Lopez claims he sustained substantial injuries as a result of

16  this alleged attack, including a fractured jaw and elbow.  (*Id.*, ¶ 21.)

17  Additional Vallejo PD officers arrived on the scene, at which point they handcuffed

18  Trujillo-Lopez and placed him in the back of Officer DeMarco's car.  (*Id.*, ¶¶ 22-23.)  Officer

19  DeMarco then drove Trujillo-Lopez to Sutter Solano Medical Center in Vallejo, where the hospital

20  staff took x-rays.  (*Id.*, ¶¶ 23, 25.)  Plaintiff alleges that Officer DeMarco "gave a false report to

21  the Emergency Room Staff" and that DeMarco refused to allow the ER staff to administer pain

22  killers.  (*Id.*, ¶¶ 23, 26.)

23  Officer DeMarco then drove Trujillo-Lopez to the jail, where Trujillo-Lopez posted bail

24  and was released.  (*Id.*, ¶ 24.)  Trujillo-Lopez was charged with resisting arrest and assaulting a

25  police officer.  (*Id.*, ¶ 24.)

26  Plaintiff filed this action on March 27, 2020.  (Dkt. No. 1.)  On July 23, 2020, the Parties

27  filed a Joint Stipulation requesting that the Court stay the case pending resolution of a related

28  criminal matter in California state court.  (Dkt. No. 15.)  The Court granted the stay on July 24,

2

1   2020, with instructions that the Parties promptly notify the Court when the criminal proceedings

2   were resolved, and also providing Defendants ten days to answer or otherwise respond to

3   Plaintiff's Complaint following a lift of the stay.  (Dkt. No. 16.)  On July 8, 2022, the Parties

4   submitted another Joint Stipulation informing the Court that the criminal matter resolved, and on

5   that same day, this Court lifted the stay, ordering Defendants to respond or answer to the

6   Complaint within ten days. (Dkt. Nos. 19, 20.)  On July 18, 2022, Defendants filed this motion to

7   dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

8          The Court will address additional facts as necessary in its analysis.

9                                    **ANALYSIS**

10  **A.      Applicable Legal Standard.**

11         A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

12  pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to

13  the allegations in the complaint, which are accepted as true and construed in the light most

14  favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

15  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

16  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

17  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

18  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

19  (1986)).

20         Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

21  must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

22  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

23  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

24  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  In reviewing the plausibility

25  of a complaint, courts "accept factual allegations in the complaint as true and construe the

26

27         _____

           [1]  Defendants argued that the case should be dismissed because venue was improper.
28  Following an Order to Show Cause, Defendants withdrew their objection to venue.  (*See* Dkt. Nos.
    34, 35.)

United States District Court
Northern District of California

pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, F.3d 1049, 1055 (9th Cir. 2008).

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**B.      The Court Grants Defendants' Motion to Dismiss.**

> **1.      The Court Grants the Motion to Dismiss the 42 U.S.C. § 1985 Claim and Denies Leave to Amend.**

Plaintiff alleges a conspiracy to violate his constitutional rights because "Officer [DeMarco] acted in concert to fabricate statements in order to prosecute [Trujillo-Lopez] for crimes [DeMarco] knew [Plaintiff] did not commit. The fabrication and falsification of [Plaintiff's] statements were overt acts in furtherance of [a] conspiracy, as were the subsequent acts of concealing the fabrication and withholding evidence." (Complaint, ¶ 41.) Defendants contend that Plaintiff's conspiracy claim fails because there are insufficient facts to demonstrate a constitutional violation, and because it is barred by the "intracorporate conspiracy doctrine."

Defendants argue that qualified immunity bars Plaintiff's section 1985(3) claim because the law was not settled in October 2018 that an intra-corporate agreement could subject officers to

section 1985(3) liability.  Under the intracorporate-conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017).

Constitutional violations are analyzed through the lens of qualified immunity which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To analyze qualified immunity, a court engages in a two-prong inquiry, asking whether a constitutional right has been violated and whether that right was "clearly established." *See id.* at 232, 236 (holding that there is no mandated order in which a court should review these prongs). Whether a right is "clearly established" depends on whether the "contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

A plaintiff bears the initial burden of proving that the rights allegedly violated by defendants were clearly established at the time of the alleged misconduct.  *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Houghton v. Smith*, 965 F.2d 1532, 1534 (9th Cir. 1992).  "[T]he proper fact-specific inquiry . . . is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the defendant's] position could have objectively believed his actions to be proper." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991).

Neither the Supreme Court nor the Ninth Circuit have decided whether the intracorporate conspiracy doctrine applies to civil rights actions, and both have noted a split among the circuits. *See Ziglar*, 137 S. Ct. at 1868 ("There is a division in the courts of appeals [] respecting the validity or correctness of the intracorporate-conspiracy doctrine with reference to § 1985 conspiracies . . . . Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged §

United States District Court
Northern District of California

1985(3) violation."y); *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1059-60 (9th Cir. 2020) (intracorporate liability was not clearly established at the time of the events in the case and therefore defendants were entitled to qualified immunity from liability under § 1985(3)). The Ninth Circuit did not decide whether the intracorporate conspiracy doctrine applied to civil rights actions.).

Here, Plaintiff accuses Officer DeMarco and Chief Bidou of engaging in a conspiracy when Chief Bidou ratified Officer DeMarco's conduct toward the Plaintiff by vindicating DeMarco of any wrongdoing.  During the time in question, both Officer DeMarco and Chief Bidou worked for the same legal entity: the Vallejo Police Department.  In Plaintiff's alleged conspiracy, Officer DeMarco and Chief Bidou were working in their official capacities. Therefore, the intracorporate liability doctrine applies to the Officer DeMarco's and Chief Bidou's actions.  *See Abbasi*, 137 S. Ct. at 1867.  Because the circuits are still split and the Ninth Circuit has yet to determine the applicability of intracorporate liability to section 1985(3), there is not clearly established law, and the Defendants are entitled to qualified immunity on the § 1985(3) allegations in the complaint.

Accordingly, the Court GRANTS Defendants' motion to dismiss the section 1985(3) claim.  The Court further determines that it would be futile to provide leave to amend because Plaintiff cannot plead facts that would defeat a finding of qualified immunity.

**2.      The Court Grants the Motion to Dismiss the 42 U.S.C. Section 1986 Claim and Denies Leave to Amend.**

Plaintiff also claims that Defendant Bidou violated 42 U.S.C. section 1986 because he "neglected to stop the 'wrongs conspired to be done' to [Plaintiff] by officers under his supervision" and by "actively join[ing] the conspiracy."  (Complaint, ¶ 45.)  Section 1986 imposes liability on "every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation."  *Karim–Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  However, "a claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."  *Id.*; *see also Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir.1985) ("[The Ninth] Circuit has recently adopted the broadly accepted principle that a cause of action is

1    not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.").

2    Accordingly, since Plaintiff failed to establish a section 1985 claim, he has also failed to establish

3    a section 1986 claim.  The Court therefore GRANTS Defendants' motion to dismiss the section

4    1986 cause of action and denies leave to amend because it would be futile.

   3.   **The Court Grants the Motion to Dismiss the 42 U.S.C. Section 1983 Claim but**
        **Provides Plaintiff Leave to Amend.**

6        Plaintiff alleges that the City, Vallejo PD, and Defendant Bidou are liable for *Monell*

7    violations because all three tolerated and encouraged misconduct by failing to adequately

8    supervise, discipline, and train officers in the use of excessive force, and Vallejo had an official

9    custom and/or policy of inaction regarding the Vallejo PD officers' use of force.  Plaintiff also

10   alleges that the Vallejo and Vallejo PD have an inadequate Use of Force policy that does not

11   provide a bright line to officers.  Defendant argues that the *Monell* claims should be dismissed

12   because Plaintiff only provided conclusory allegations that are not adequately plead.

13       A local government may not be sued under a theory of respondeat superior for injuries

14   inflicted by its employees or agents.  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S.

15   658, 691 (1978).  However, "[l]ocal governing bodies . . . can be sued directly under § 1983 for

16   monetary, declaratory, or injunctive relief where . . . the action that is alleged to be

17   unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

18   officially adopted and promulgated by that body's officers."  *Id.* at 690.

19        Under *Monell*, a plaintiff may establish municipal liability by demonstrating that "(1) the

20   constitutional tort was the result of a longstanding practice or custom which constitutes the

21   standard operating procedure of the local government entity; (2) the tortfeasor was an official

22   whose acts fairly represent official policy such that the challenged action constituted official

23   policy; or (3) an official with final policy-making authority delegated that authority to, or ratified

24   the decision of, a subordinate."  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).  Additionally, in

25   "limited circumstances," the failure to train municipal employees can serve as the policy

26   underlying a *Monell* claim.  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

27       Moreover, a plaintiff must demonstrate that the government's official policy or custom was

28

United States District Court
Northern District of California

7

1    the "moving force" responsible for the infliction of the plaintiff's injuries. *Monell*, 436 U.S. at

2    694. "To meet th[e] causation requirement, the plaintiff must establish both causation-in-fact and

3    proximate causation." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).

4          Finally, "[t]he Ninth Circuit has made clear that claims of *Monell* liability must now

5    comply with the basic principles set forth in *Twombly* and *Iqbal*: (1) the complaint "may not

6    simply recite the elements of a cause of action, but must contain sufficient allegations of

7    underlying facts to give fair notice and to enable the opposing party to defend itself effectively;"

8    and (2) the "factual allegations that are taken as true must plausibly suggest an entitlement to

9    relief, such that it is not unfair to require the opposing party to be subjected to the expense of

10   discovery and continued litigation." *A.E. ex rel Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636–

11   37 (9th Cir. 2012).

12            **a.**     **The City of Vallejo is a Suable Defendant for Section 1983 Purposes**

13                     **and the Court Grants Leave to Amend Regarding Chief Bidou's Capacity.**

14         Defendant argues that the Court should dismiss the section 1983 claims against Defendant

15   Bidou and Vallejo PD. "Section 1983 affords plaintiffs protection under the due process and

16   equal protection clauses of the Fourteenth Amendment, but only for deprivations by persons

17   acting under the color of state law." *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995 (N.D.

18   Cal. 1996). "The term 'persons' encompasses state and local officials sued in their individual

19   capacities, private individuals and entities which acted under color of state law, and local

20   governmental entities." *Id.* at 995-96.

21         The Complaint does not make clear if Chief Bidou is being sued in his individual capacity

22   or official capacity. However, "[w]hen both a municipal officer and a local government entity are

23   named, and the officer is named only in an official capacity, [a] court may dismiss the officer as a

24   redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dept.*, 533 F.3d 780,

25   799 (9th Cir. 2008). Therefore, if Plaintiff is suing Chief Bidou in his official capacity, then the

26   Court would have to dismiss Bidou as a defendant for the section 1983 claim. The Court provides

27   Plaintiff leave to amend to clarify in which capacity he is suing Chief Bidou.

28         Further, Defendant argues that Vallejo PD cannot be held liable for section 1983 claims

8

because it is not considered a "person" under section 1983.  Generally, the term "persons" does not encompass municipal departments.  *Vance*, 928 F. Supp. at 996.  However, the Ninth Circuit has held that, depending on state law, a local law enforcement agency can be a separately suable entity.  *Silva v. San Pablo Police Dep't*, 805 Fed. App'x 482, 484 (9th Cir. 2020).  In fact, the Ninth Circuit held that "the courts of California would hold that the Police Department is a public entity that can be sued."  *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604-05 (9th Cir. 1986); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988).  Therefore, Vallejo PD is a separate suable entity, and the Court DENIES Defendants' motion to dismiss the section 1983 claims against Vallejo PD.

> **b.    Plaintiff Has Not Adequately Pled the Causation Requirement.**

Plaintiff must adequately allege that the government's official policy or custom was the "moving force" behind Plaintiff's injuries.  *Monell*, 436 U.S. at 694.  Although Plaintiff recites this element in his Complaint, he provides no facts that indicate that Officer DeMarco's actions were caused by the alleged customs, policies, and practices.  The Ninth Circuit has previously held that the causation prong is not met when a Plaintiff merely alleges that "Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Similarly, here, Plaintiff simply states that the "policy of inaction, [] policy of lack of supervision, and [] policy of lack of training . . . was a direct and proximate cause of the violation" to Plaintiff.  (Complaint, ¶ 53.)  Plaintiff's allegations of causation are conclusory and do not establish a causal connection between the custom, policy, or practice at issue and any particular violation of a constitutional right.

> **c.    Plaintiff Has Not Adequately Pled Custom, Policy, or Failure to Train.**

A municipality can be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).  "Although a constitutional violation must result from 'official municipal policy,' a county need not expressly adopt the policy.  It is sufficient that the constitutional violation occurred pursuant to

a 'longstanding practice or custom.'" *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).

#### i.       Custom.

Plaintiff alleges that the City and the Vallejo PD have an unofficial custom of using excessive force against Vallejo citizens.  An unofficially adopted practice or custom "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Generally, "[w]hile there is no per se rule for the amount of unconstitutional incidents required to establish a custom under *Monell*, one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality." *Wettstein v. Cnty. of Riverside*, No. EDCV 19-1298 JGB, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020); *see also Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) ("Proof of [two prior] unconstitutional assaults by [law enforcement] agents... standing alone, does not support a finding of liability against the County."); *Oyenik v. Corizon Health, Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("[O]ne or two incidents are insufficient to establish a custom or policy[.]").

Here, Plaintiff falls far short of what is required to properly plead a *Monell* custom and policy claim.  Plaintiff merely claims that there are "numerous cases" and a "long list of similar cases" involving Vallejo Police Officers, including Officer DeMarco, exhibiting excessive force against Vallejo's citizens.[2]  However, Plaintiff does not specify other cases or provide any details as to how the other cases are similar to Plaintiff's claim.  Plaintiff's allegations are too vague and

---

[2]   The Court also notes that Plaintiff attempts to amend the Complaint through its Opposition to Defendants' Motion to Dismiss by introducing a newspaper article regarding another incident that allegedly involves another instance of Officer DeMarco using excessive force, thus showing a custom and practice sufficient to meet the pleading standard.  However, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  Therefore, "when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."  *Id.* (internal quotations and citations omitted).  Accordingly, the Court did not examine any evidence of custom or practice not alleged in the Complaint.

United States District Court
Northern District of California

1  non-specific for the Court to take into account their similarity in relation to the incident involved

2  in this case.

3          **ii.**        **Policy.**

4          Plaintiff also alleges a policy of inaction in disciplining and supervising Vallejo PD

5  officers following acts of excessive force.  In order to establish an unconstitutional policy on the

6  part of a municipality, Plaintiff must allege: "(1) that [the plaintiff] possessed a constitutional right

7  of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to

8  deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving

9  force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th

10  Cir. 2011).

11          Courts in this Circuit and District have found vague assertions of municipal policies to be

12  insufficient to meet the pleading standard.  For instance, the Ninth Circuit found that a plaintiff

13  had inadequately alleged a municipal policy because the plaintiff merely alleged that an officer

14  "performed all acts and omissions . . . under the ordinances, regulations, customs, and practices of

15  [the county]" and the county "maintained or permitted an official policy, custom, or practice of

16  knowingly permitting the occurrence of the type of wrongs" alleged elsewhere in the complaint.

17  *AE*, 666 F.3d at 637.  Similarly, a Court found it insufficient for a plaintiff merely to allege that

18  the challenged policy was an "informal custom or policy that tolerates and promotes the continued

19  use of excessive force and cruel and unusual punishment against and violation of civil rights of

20  citizens by City police officers." *Mendy v. City of Fremont*, No. C-13-4180 MMC, 2014 WL

21  574599, at *3 (N.D. Cal. Feb. 12, 2014).  The *Mendy* court reasoned that the "allegation lack[ed]

22  any specifics and [was] substantially similar to the conclusory allegation found inadequate in *AE*"

23  and thus was insufficient to state a municipal liability claim.  *Id.*

24          Here, Plaintiff alleges that Defendants maintain a policy of "inaction regarding disciplining

25  police officers for excessive force."  (Complaint, ¶ 48.)  Similar to *AE* and *Mendy*, Plaintiff's

26  allegations regarding Defendant's policies are conclusory and do not provide the specifics

27  necessary to place Defendant on notice.

28

United States District Court
Northern District of California

### iii.   Failure to Train.

Plaintiff also claims that Defendants fail to train their police officers in how to protect the constitutional rights of citizens.  In order to establish that a municipality is liable under *Monell* for failure to train, Plaintiff must show that a particular training deficiency was so egregious that it "amount[ed] to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Further, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 563 U.S. at 62 (internal quotation marks and citations omitted).  Here, the Complaint contains no allegations concerning Vallejo's alleged failure to train.  Plaintiff briefly alleges that Vallejo "maintains a custom, policy and pattern and practice of failing to exercise reasonable care in training, supervising and hiring its officers" without providing any facts relating to the officers' training.  (Complaint, ¶ 48.)  The Complaint does not allege what training the Vallejo police officers received nor does it indicate that any Vallejo policymaker was aware that the training was deficient.  Therefore, Plaintiff has insufficiently alleged a "failure to train" theory of *Monell* liability.

Accordingly, the Court GRANTS Defendants' motion to dismiss the *Monell* claim, but grants Plaintiff leave to amend.

### 4.   The Court Grants the Motion to Dismiss the Assault and Battery Claim with Leave to Amend.

Plaintiff alleges that Defendant DeMarco assaulted and battered him by using unreasonable force during the incident at issue.  Defendants argue that the Court should dismiss the assault and battery claim because there is no federal-common-law "assault and battery" claim to satisfy section 1983.

"Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.  Remedy for the latter type of injury must be sought in state court under traditional tort-law principles."  *Baker v. McCollan*, 443 U.S. 137, 146 (1979).  Plaintiff states, without citation to any authority, that "California district courts . . . have refused to hold that a 1983 claim for Fourth Amendment excessive force is duplicative of a Fourth Amendment claim for assault and battery."  (Dkt. No. 26, Plaintiff's Opposition to Defendants'

United States District Court
Northern District of California

Motion to Dismiss, at 7.)  However, the Court has not found any case that recognizes either an assault or a battery claim grounded in section 1983.[3]

Therefore, the Court GRANTS the motion to dismiss the assault and battery claim, and provides Plaintiff leave to amend, where the Plaintiff should provide the legal authority that demonstrates that "assault and battery" can be recognized as a federal claim under section 1983.

### 5. The Court Grants the Motion to Dismiss the False Imprisonment and False Arrest Claims and Denies Leave to Amend.

Plaintiff claims that Officer DeMarco falsely arrested and falsely imprisoned him because DeMarco confined Plaintiff "at [] home, at the hospital, arresting him and at all times until release." (Complaint, 60.)  Defendants argue that the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), and the Ninth Circuit's ruling in *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011), bar Plaintiff's false arrest and false imprisonment causes of action because any successful claim that he was arrested without cause would nullify his conviction.

Under California law, "false arrest is not a different tort but is merely one way of committing a false imprisonment." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citation and quotation marks omitted).  Pursuant to section 847 of the California Penal Code, "no cause of action shall arise against, any peace officer . . ., acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest when . . . [t]he arrest was lawful. . . ."

In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

---

[3]   In fact, a number of district courts in other jurisdictions have found that there is no cognizable "federal common law claim for assault or battery."  *See Henderson v. Williams*, No. 3:10-cv-1621 (JCH), 2013 WL 1984545, at *3 n.3 (D. Conn. May 13, 2013); *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018), *aff'd*, 765 F. App'x 493 (2nd Cir. 2019), *cert. denied sub nom. Boyler v. City of Lackawanna, N.Y.*, 140 S. Ct. 63 (2019); *Gulbronson v. Anderson*, No. 19-cv-156-AW-GRJ, 2020 WL 2737005, at *5 (N.D. Fla. Mar. 27, 2020) ("Any 'federal claim of assault and battery' should be dismissed" because "they are not supported by federal law.").

called into question by a federal court's issuance of a writ of habeas corpus. . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted). The Supreme Court also stated that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487.

The Ninth Circuit applied *Heck* in a case where a plaintiff pled no contest to reckless driving. *Lockett v. Ericson,* 656 F.3d 892 (9th Cir. 2011). The Ninth Circuit held that the plaintiff was not *Heck*-barred from bringing a section 1983 claim based on an alleged unlawful search because the outcome of the claim had no bearing on the validity of the plaintiff's plea. *Id.* at 896–97. In another case, the Ninth Circuit emphasized that *Heck* could bar section 1983 claims, "even where the plaintiff's prior convictions were the result of guilty or no contest pleas." *Radwan v. County of Orange*, 519 Fed. App'x 490, 491 (9th Cir. 2013). Applying this ruling, the Ninth Circuit held that a section 1983 claim for unlawful search and seizure was *Heck*-barred because the plaintiff "challenged the search and seizure of marijuana that formed the basis of his conviction for marijuana possession" and a successful claim would "necessarily imply the invalidity of his own conviction for marijuana possession." *Id.* at 491.

Here, Plaintiff was convicted of disturbing the peace, which makes it unlawful to "fight[] in a public place or challenge[] another person in a public place to fight." Cal. Penal Code § 415(1); (Dkt. No. 22-2, Declaration of Pamela K. Graham ("Graham Decl."), ¶ 10; Dkt. No. 22-1, Exh. H.) Plaintiff now argues that the arrest that led to his conviction was unlawful, although he does not make clear as to which of Officer DeMarco's actions were unlawful. Regardless, if Plaintiff were to succeed on his false imprisonment and false arrest claims, it would call into question his prior conviction for disturbing the peace because there would be doubt as to whether Officer DeMarco had probable cause to believe that Plaintiff was violating the law. The challenged arrest for disturbing the peace would necessarily imply the invalidity of his own conviction for disturbing the peace. *See Radwan*, 519 Fed. App'x at 491 n.1 ("*Heck* also bars [the plaintiff's] state-law false arrest claims because success on those claims would call into question

14

the lawfulness of his prior conviction for marijuana possession.").

Therefore, the Court GRANTS Defendants' motion to dismiss the false arrest and false imprisonment claims. The Court denies leave to amend because it would be futile.

### 6.   The Court Grants the Motion to Dismiss the California State Law Claims and Denies Leave to Amend.

Plaintiff brings five state law claims: false imprisonment, intentional infliction of emotional distress, malicious prosecution, negligent training, hiring, retention and supervision, and defamation.  Plaintiff seeks damages for all of the claims.  Defendants argue that the state law claims should be dismissed because Plaintiff has failed to comply with the California Government Claims Act.

Under the California Government Claims Act, a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the public entity.  *See* Cal. Gov. Code § 945.4.  Compliance with this "claim presentation requirement" is mandatory.  *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244 (2004).  In fact, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action."  *Id.* at 1243.

The Government Claims Act requires that a claim relating to a cause of action for an injury to a person shall be presented no later than six months after the accrual of the cause of action, and a claim relating to any other cause of action shall be presented not later than one year after the accrual of the cause of action.  Cal. Gov. Code § 911.2(a).  The Government Claims Act prohibits a person charged in a criminal offense from filing a civil action for money or damages against a police officer or public entity based upon conduct relating to the offense for which an accused is charged.  Cal. Gov. Code § 945.3.  However, the accused must still file a claim with the board of a public entity within the time requirements proscribed by section 911.2 of the California Government Code.  Cal. Gov. Code § 945.3.  Accordingly, timely claim presentation is not merely a procedural requirement, but is "a condition precedent to plaintiff's maintaining an action against defendant" and thus an element of the plaintiff's cause of action.  *Bodde*, 32 Cal.4th at 1240.

1    Here, the events leading to Plaintiff's state law claims occurred on October 28, 2018,

2    which also set the date by when Plaintiff was required to file his claim with the public entity.

3    Complaint, ¶ 11; Cal. Gov. Code § 911.2.  Plaintiff filed his claim with the City on June 6, 2019,

4    which is seven months after the claims accrued.  (Graham Decl., ¶ 4; Exh. C.)  On June 19, 2019,

5    the City rejected the claim as being untimely filed, and notified Plaintiff that his only recourse was

6    to apply to the City for leave to present a late claim.  (Graham Decl., ¶ 5; Exh. D.)  Plaintiff filed

7    his application to present a late claim on September 27, 2019, stating that he "mistakenly believed

8    he could wait until after his pending criminal matter was resolved to present the claim."  (Graham

9    Decl., ¶ 6; Exh. E.)  On September 30, 2019, the City denied Plaintiff's application and informed

10   him that before he could "file a court action on this matter," he had to "first petition the

11   appropriate court for an order relieving [him] from the provisions of the [claims presentation

12   requirement]" and that the petition had to be filed within six months.  (Graham Decl., ¶ 7; Exh. E.)

13   Plaintiff did not petition any court to relieve him from the provisions of the California

14   Government Claims Act, and instead filed this suit on March 27, 2020.

15   Plaintiff failed to comply with the provisions of the California Government Claims Act

16   because he did not follow all of the procedures required when he filed a late claim.  Therefore, the

17   Court GRANTS the Defendants' motion to dismiss the state law claims.  The Court dismisses the

18   claims without leave to amend because it will not be possible for the Plaintiff to plead facts

19   sufficient to demonstrate that he complied with the California Government Claims Act.

20   **C.      The Court Grants Attorneys' Fees with Regards to the Motion to Strike.**

21   Although the Court dismisses Plaintiff's defamation claim, the Court still must consider

22   and rule on Defendants' Special Motion to Strike Plaintiff's Claim for Defamation because a "trial

23   court must, upon defendant's motion for a fee award, rule on the merits of [a] SLAPP motion even

24   if the matter has been dismissed prior to the hearing on that motion."  *Pfeiffer Venice Props. v.*

25   *Bernard*, 101 Cal. App. 4th 211, 218 (2002).

26   **1.    Merits of the anti-SLAPP motion.**

27   California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute

28   provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of free speech.  Cal. Civ. Proc. Code § 425.16(a).  Section 425.16 permits defendants (or

2    counterclaim defendants) to bring a "special motion to strike" if a cause of action against them

3    arises "from any act . . . in furtherance of the person's right of petition or free speech . . . in

4    connection with a public issue[.]"  Cal. Civ. Proc. Code § 425.16(b)(1), (h).  A special motion to

5    strike under Section 425.16 is commonly referred to as an anti-SLAPP motion.

6          An anti-SLAPP motion involves a two-step analysis.  First, the court must decide whether

7    the defendant has made a threshold showing that the challenged cause of action is one "arising

8    from" protected activity.  *See, e.g.*, *City of Cotati v. Cashman*, 29 Cal.4th 69, 76 (2002).  If the

9    defendant establishes a prima facie case that the claims arise from protected activity, the burden

10   then shifts to the plaintiff to establish a probability that the plaintiff will prevail on the claim.  *Id.*

11         The California Legislature expressly intended that Section 425.16 "be construed broadly"

12   in protection of the public interest.  Cal. Civ. Proc. Code § 425.16(a).  Although it is a state

13   statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court.  *Vess v.*

14   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citing *United States ex. rel.*

15   *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999) (holding that

16   there is no direct conflict between the Federal Rules and sections 425.16(b) and (c), and that

17   adopting California procedural rules serves the purposes of the *Erie* doctrine)).

18         The statute establishes four categories of protected speech or conduct: (1) "any written or

19   oral statement or writing made before a legislative, executive, or judicial proceeding"; (2) "any

20   written or oral statement or writing made in connection with an issue under consideration or

21   review by a legislative, executive, or judicial body"; (3) written or oral statements made "in a

22   public forum in connection with an issue of public interest"; and (4) any other conduct furthering a

23   right of petition or free speech in connection with a public issue.  Cal. Civ. Proc. Code §

24   425.16(e).

25         Here, Plaintiff alleged that Defendant was liable for defamation because Officer DeMarco

26   and Chief Bidou "each intentionally and knowingly published false [p]olice [r]eports, falsely

27   charging [Plaintiff] with serious crimes, which they knew he did not commit."  (Complaint, ¶ 84.)

28   Defendants argue that they have a prima facie case that the claims arise from protected speech

because police reports fall within § 425.16 protection.  The Court agrees with Defendants.

Multiple California courts have found that police officers' statements in the course of their duties

constitute acts in furtherance of their constitutional rights of free speech or petition within the

meaning of California's anti-SLAPP statute.  *See, e.g.*, *Schaffer v. City & Cnty. of San Francisco*,

168 Cal. App. 4th 992, 1004 (2008) (police officers' memorandum and affidavits were made in

connection with an issue under consideration by the district attorney meaning the statements were

made "in connection with an issue under consideration or review by a legislative, executive, or

judicial body, or any other official proceeding authorized by law"); *Salma v. Capon*, 161 Cal.

App. 4th 1275, 1286 (2008) (communications with district attorney and police and attempts to

press charges were communications seeking official investigations into perceived wrongdoing and

thus protected by section 425.16); *Bradbury v. Superior Ct.*, 49 Cal. App. 4th 1108, 1115 (1996)

("section 425.16 extends to public employees who issue reports and comment on issues of public

interest relating to their official duties").  Officer DeMarco's and Chief Bidou's statements were

made in connection with a potential prosecution of Plaintiff.  Officer DeMarco provided his

version of what transpired so that the district attorney could decide whether to prosecute.  Chief

Bidou provided further context to the district attorney regarding Officer DeMarco's actions, which

would allow the DA to make a proper determination as to whether to charge Plaintiff.

Accordingly, the Defendants' written statements fall within California Code of Civil Procedure

section 425.16(e)(2) because they were made in furtherance of their official duties and in

connection with an issue under consideration by an executive body.

Plaintiff argues that Defendants have not met their burden because the drafting of the arrest

reports were "incidental to the thrust of the cause of action which is the perpetuation of false

statements."  Essentially, Plaintiff believes that his defamation cause of action is about falsehoods

perpetrated by the Defendant officers in general, and not about the police reports in particular.

However, a defamation claim arises out of either a written or oral communication that is false and

unprivileged and that exposes a person to contempt or ridicule or certain other reputational

injuries.  Cal. Civ. Code §§ 45, 46.  A defamation claim does not exist in the abstract, unattached

from a written or oral statement.  The falsehoods necessarily need to be attached to either a written

18

1   or oral statement to have a successful defamation claim.  Therefore, Plaintiff's attempt to detach

2   the statements from the police reports fail, and the Court finds that the officers' statements were

3   protected statements within the anti-SLAPP statute.

4          The Court also finds that Plaintiff cannot establish any probability that he will win on the

5   defamation claim.  As discussed *supra*, the defamation claims are barred and dismissed without

6   leave to amend because Plaintiff fail to comply with the California Government Claims Act

7   requirements.  Accordingly, the anti-SLAPP motion is successful.

8          **2.  Attorneys' Fees.**

9          Defendants argue that they should be awarded $4,663 in attorneys' fees if they successfully

10  prevail in their anti-SLAPP motion.  "[A]ny SLAPP defendant who brings a successful motion to

11  strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001).

12  A party who brings a successful anti-SLAPP motion is entitled to recover attorneys' fees in an

13  amount that will adequately compensate the party for the expense of responding to a baseless

14  lawsuit. *Id.* at 1131.  The mandatory fees provision applies equally to government defendants.

15  *See Vargas v. City of Salinas*, 200 Cal. App. 4th 1331, 1348 (2011).  Fee awards are limited to

16  work directly related to the motion to strike. *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th

17  1315, 1320 (2008).

18         "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the

19  number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v.

20  Drexler*, 22 Cal.4th 1084, 1095 (2000) (citation omitted).  Accordingly, the Court considers the

21  reasonableness of counsel's asserted hourly rates and hours expended. *Hensley v. Eckerhart*, 461

22  U.S. 424, 433 (1983).

23         "In determining a reasonable hourly rate, the district court should be guided by the rate

24  prevailing in the community for similar work performed by attorneys of comparable skill,

25  experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir.

26  1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v.

27  Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "Generally, the relevant community is the forum in

28  which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  Further, in

United States District Court
Northern District of California

19

United States District Court
Northern District of California

examining cases to determine the prevailing market rate, courts should consider cases that were decided relatively contemporaneously to the time the work was performed.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (noting that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services").

Here, Defendants' attorneys seek hourly rates in the range of $295 and $325 per hour. (Graham Decl., ¶ 13.)  These hourly rates are within the range of rates other judges in this District have recently approved for fee awards for successful anti-SLAPP motions.  *See, e.g.*, *Gregory v. Harris*, No. 21-cv-03311-VKD, 2022 WL 1136798, at *4 (N.D. Cal. Apr. 18, 2022) (finding hourly rates ranging between $350 to $450 for a partner with 16 years of experience and $270 hours for an associate as reasonable); *Jiang v. KNTV Television LLC*, No. 21-cv-01293-LB, 2021 WL 4710717, at *4–6 (N.D. Cal. Oct. 8, 2021) (finding hourly rates between $336 and $774 were reasonable); *Resolute Forest Products, Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2019 WL 8377690, at *3 (N.D. Cal. Sept. 24, 2019) (finding hourly rates between $300 and $830 per hour were consistent with prevailing rates in the Bay Area legal market for defense counsel's time preparing anti-SLAPP motions and a motion for attorney's fees).  Accordingly, the Court finds that these asserted rates are reasonable.

Defendants' attorneys also claim that they spent 17 hours on work directly related to the anti-SLAPP motion.  (Graham Decl., ¶ 13.)  Even though Defendants did not provide detailed records or evidence to confirm the hours spent, "[t]he law is clear [] that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."  *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009).  The number of hours claimed are lower than the hours that other judges in this District have found to be reasonable.  *See Gregory*, 2022 WL 1136798, at *5 (approving attorneys' fees for 46 hours spent performing work directly related to the anti-SLAPP motion); *Mohazzabi v. Wells Fargo Bank, N.A.*, No. 21-cv-04234-JST, 2022 WL 595878, at *7 (N.D. Cal. Feb. 28, 2022) (approving attorneys' fees for 47.2 hours incurred for anti-SLAPP motion and "directly related" motion to dismiss); *Smith v. Payne*, No. C 12-01732 DMR, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15, 2013) (approving attorneys'

1  fees for 66.5 hours incurred for anti-SLAPP motion).  Accordingly, the Court finds the 17 hours

2  that Defendants' counsel spent on the anti-SLAPP motion to be reasonable.

3       Accordingly, the Court GRANTS Defendants' motion for attorneys' fees totaling $4,663.

4  **CONCLUSION**

5       For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss for failure to

6  state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) with leave to amend where

7  specified.  Should Plaintiffs wish to amend their complaint, they may file an amended complaint

8  by no later than December 2, 2022.

9       **IT IS SO ORDERED.**

10  Dated: November 8, 2022

                                  _____

                                  JEFFREY S. WHITE
                                  United States District Judge

United States District Court
Northern District of California